**IT IS SO ORDERED.**

**Dated:  11 March, 2025 03:35 PM**

_Suzana Krstevski Koch_
**Suzana Krstevski Koch**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 22-10064 |
| | ) | |
| GARY T. STEWART, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Suzana Krstevski Koch |
| | ) | |

## <u>MEMORANDUM OF OPINION AND ORDER</u>

This matter is before the Court on Debtor Gary T. Stewart's ("Debtor") Objection to

Claim Number 2 ("Objection to Claim") (ECF No. 36) with Brief in Support of Objection to

Claim 2 ("Brief in Support") (ECF No. 52), and the Chapter 13 Trustee's (the "Trustee")

Response to Objection to Claim (ECF No. 41) with Response Brief to Debtor's Brief in Support

(the "Response Brief").  ECF No. 53.

**FACTUAL AND PROCEDURAL BACKGROUND**

*1. Debtor's Bankruptcy Petition*

On January 10, 2022, Debtor filed his petition for relief under Chapter 13 of the Bankruptcy Code. ECF No. 1. In his Schedule E/F, Debtor listed Americredit Financial Services ("Americredit") as a creditor with an unsecured claim on a 2004 Denali in the amount of $11,000.00. ECF No. 1.

On January 18, 2022, Americredit filed a proof of claim ("Claim Number 2") claiming an unsecured claim in the amount of $13,228.47. Americredit attached a Deficiency Report itemizing the amount owed and listing the sale date of the vehicle as September 9, 2020. Americredit also attached a copy of a Retail Sales Contract between Debtor and Jay Buick GMC regarding a 2014 GMC Terrain. The Retail Sales Contract assigned Jay Buick GMC's interest to Americredit. The Retail Sales Contract included Debtor's signature, dated August 19, 2017. Thereafter, Debtor filed a proposed plan (ECF No. 8), and the Trustee objected to the proposed plan. ECF No. 15. There were no objections relating to Claim Number 2.

On March 25, 2022, Debtor filed an Amended Chapter 13 Plan ("Debtor's Plan"). ECF No. 16. The Plan called for Debtor to make regular payments to the Trustee for 36 months (known as a "36-month plan"). On May 10, 2022, the Court confirmed Debtor's Plan. ECF No. 22.

*2. Post-Confirmation Plan Activity*

On June 13, 2022, the Trustee filed a Notice of Intention to Pay Claim (the "Notice"). ECF No. 26. The Notice listed Americredit as a creditor with a general unsecured claim in the amount of $13,228.47. *Id.* The Notice also stated that it was served on "Debtor and the attorney

2

for the Debtor so that claims may be reviewed and a determination made whether any claim should be objected to. . . . ." *Id.* Further, it cautioned that "[u]nless a party in interest filed an objection to a claim . . . within 30 days of the date of this notice . . . , said claims will be paid according to the terms of the plan." *Id.* No objections were filed in response to the Notice.[1]

On February 28, 2023, the Trustee filed her Report of Receipts and Disbursements (the "First Report"). ECF No. 28. The First Report showed that the Trustee had paid Americredit $1,471.22 for Claim Number 2 between January 1, 2022 and January 21, 2023. *Id.* No objections were filed in response to the First Report.

On February 27, 2024, the Trustee filed another Report of Receipts and Disbursements (the "Second Report"). ECF No. 32. The Second Report showed the Trustee had paid Americredit $2,135.93 for Claim Number 2 between January 1, 2023 and January 31, 2024. *Id.* No objections were filed in response to the Second Report.

On October 11, 2024, the Trustee filed a Motion to Modify Plan ("Motion to Modify"), known as a "*Baud* Modification," seeking to increase the dividend because Debtor's Plan was not running the applicable commitment period of 36 months.[2] ECF No. 34. On October 30, 2024, Debtor filed an Objection to Trustee's Motion to Modify (the "Objection to Modification"), asserting the Trustee's calculations were incorrect. ECF No. 38.

---

[1] On June 29, 2022, about two weeks after the Notice was served, Debtor docketed a Notice of Change of Address. ECF No. 27.

[2] The Trustee's Motion to Modify implicating *Baud v. Carroll*, 634 F.3d 237 (6th Cir. 2011) was filed at the same time the Objection to Claim Number matter arose, and both issues were discussed concurrently at subsequent hearings on *In re Stewart*. This Memorandum and Opinion only addresses the issues related to Americredit's Claim Number 2.

*3. Debtor's Objection to Americredit's Proof of Claim*

On October 29, 2024, Debtor filed his Objection to Claim, asserting Americredit's Claim Number 2 is unenforceable under Ohio law because Americredit did not provide appropriate notices prior to repossessing Debtor's vehicle.[3]  ECF No. 36.  Debtor's Objection to Claim did not include an affidavit or declaration, or any other evidence in support of his position.

On November 13, 2024, the Trustee filed her Response to Objection to Claim, arguing that the Objection to Claim should be overruled because Debtor did not object to Claim Number 2 prior to confirmation, and the Trustee had already paid $4,458.25 on the claim.  ECF No. 41.

*4. The Hearing*

On December 17, 2024, the Court held a hearing (the "Hearing") to discuss the two pending matters in Debtor's case: (1) Debtor's Objection to Claim and the Trustee's Response and (2) the Trustee's Motion to Modify and Debtor's Objection to Modification.

At the Hearing, the Court asked Debtor's counsel to explain the substantive reasons for his Objection, and further, why the Objection was filed more than two years post-confirmation. Debtor's counsel asserted he objected to Americredit's Claim Number 2 because Americredit did not include documents required under Ohio law to repossess lawfully.  In addressing the question of the timing of his objection, Debtor's counsel stated he was "not sure how this slipped through."  Hearing Tr. at 2:07:04.  The Trustee conceded that, substantively, she had no problem with the Court sustaining Debtor's Objection, but that she did not want Debtor or the Trustee's Office to bear the cost associated with recovering the money disbursed to Americredit.  In

---

[3] Debtor's Objection to Claim refers to Americredit's repossession and sale of a 2014 GMC Terrain.  Although Americredit's Proof of Claim itself does not reference a specific vehicle, the Retail Installment Contract which accompanies the Proof of Claim shows that Americredit was assigned an interest in a 2014 GMC Terrain, while Debtor's Schedule E/F listed a 2004 Denali.  The Court assumes the reference to a 2004 Denali is a typographical error.

4

response Debtor argued, citing 11 U.S.C. § 704(a)(5), that there is "no responsibility of Debtor's attorney to file any objection to any claims." Hearing Tr. at 2:09:55. Debtor's counsel argued that, "there is responsibility for the Trustee's Office to file objections to claims when objections are merited" and that the Trustee is in "a superior position [to object] because the Code requires them to do so." Hearing Tr. at 2:10:03.

The Court directed the parties to address the timing of Debtor's Objection to Claim. Debtor's counsel contended that Debtor "doesn't have any statutory limitation on when an objection can get filed. . ." and that "the Debtor has until discharge." Hearing Tr. at 2:1:45. As a practical matter, Debtor's counsel suggested that the Trustee could issue a letter to Americredit to refund the money it had received, or file a motion to turnover, but "it's not [Debtor's] responsibility" to do that. Hearing Tr. at 2:12:26. The Trustee objected to this position.

The Court, again, asked the parties to address its concerns with the timing of the Objection to Claim and the potential issues related to reliance on confirmation orders if debtors are permitted to object to a claim two and a half years after confirmation. Hearing Tr. at 2:14:20. Neither of the parties were able to cite to case law or precedent on the issue of timing. The Court ordered the parties to brief the issue of time limitations, if any, on filing an objection to claim. Hearing Tr. 2:19:05.

On January 13, 2025, Debtor filed his Brief in Support (ECF No. 52) and on February 4, 2025, the Trustee filed her Response Brief. ECF No. 53.

On March 4, 2025, the Court held a hearing on the matter to issue an oral ruling overruling Debtor's Objection to Claim. The Objection is overruled for the following reasons.

## JURISDICTION

The following constitutes the Court's findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure. An objection to claim is a contested matter. *See Kelly v. Mace (In re Mace)*, 573 Fed. App'x 490, 497 (6th Cir. 2014) ("The filing of an objection to a proof of claim creates a contested matter. . . ."). Contested matters are within the Court's jurisdiction under Rule 9014 of the Federal Rules of Bankruptcy Procedure. *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 710 (6th Cir. 1999).

## DISCUSSION

There are no statutes or rules of court governing the timing of an objection to claim. Neither the Bankruptcy Code nor the Bankruptcy Rules specify a limitation period for objecting to claims. 11 U.S.C. § 502(a) states that a proof of claim is allowed unless a party in interest objects, but does not establish a deadline for a party in interest to file an objection to a proof of claim. Rule 3002 of the Federal Rules of Bankruptcy Procedure sets a deadline for creditors filing proof of claims, but does not address deadlines for parties in interest who object to those proofs of claim. Rule 3007 of the Federal Rules of Bankruptcy Procedure, which specifically governs objections to claims, is silent as to deadlines on filing claim objections.

Courts considering whether to adjudicate post-confirmation claim objections have produced a collection of persuasive guidelines. On one end of the spectrum, courts have asserted "[i]f Congress had intended objections to claims to be filed prior to Chapter 13 plan confirmation, it would have been a simple matter to write such a deadline into the statute." *In re Barton*, 249 B.R. 561, 566 (Bankr. E.D. Wash. 2000). Other courts have held an intermediate position. In so doing, courts have curtailed the period of when a claim can properly be objected

6

to, holding that "the equitable defense of laches may limit the time within which a party must file any objection to proofs of claim." *In re Menden*, No. 07-33707, 2011 Bankr. LEXIS 3628, at *14 (Bankr. N.D. Ohio Sept. 21, 2011). On the other end, some courts have quelled post-confirmation objections to proofs of claim, altogether. *See e.g., Adair v. Sherman*, 230 F.3d 890, 894–95 (7th Cir. 2000).

The Court is persuaded by the decision in this district, like many of its sister districts, that application of the doctrine of laches is the proper way to adjudicate objections to proofs of claim filed post-confirmation on an equitable basis.

Laches is the "'negligent and unintentional failure to protect one's rights.'" *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) (quoting *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). Courts apply laches as a doctrine of equitability, used to determine the timeliness of claims when there is no specific statute of limitations that is applicable. *See e.g.*, *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.,* 796 F.3d 576, 584 (6th Cir. 2015). In such circumstances, "[e]quity . . . fashions its own time limitations through laches" to ensure "that equity will not aid a party whose unexcused delay would, if his suit were allowed, prejudice his adversary." *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975); *see also Metropolitan Bank v. St. Louis Dispatch Co.*, 149 U.S. 436, 448 (1893) ("[E]ven when there is no [statute of limitation] governing a case, a defence [sic] founded upon the lapse of time and the staleness of the claim is available in equity."). To succeed on a claim of laches, a party "must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Nartron Corp.*, 305 F.3d at 408.

7

The Court finds *Menden* instructive and highly persuasive. 2011 Bankr. LEXIS 3628. In *Menden*, the court addressed an issue much like the one before the Court in the instant matter. There, the debtors filed a Chapter 13 bankruptcy petition on August 25, 2007. *Id.* at *3. Three days later, a creditor filed a proof of claim asserting a claim secured by a vehicle owned by the debtors. *Id.* On December 12, 2007, the debtors' plan was confirmed as a 48-month plan (four years). *Id.* On February 2, 2008, the creditor filed an amended proof of claim, asserting an unsecured claim. *Id.*

Thereafter, the trustee began paying the creditor on its unsecured claim, and in March 2008, the trustee filed his first Notice of Claims Filed and Intent to Pay Claims. *Id.* at *4. It reported that the creditor would be paid "'unless a party in interest filed an objection . . . within 30 days. . . .'" (quoting the Notice of Claims). *Id.* According to the Chapter 13 Trustee, he "sent notices every six months to [d]ebtors and their attorney informing them of the payments he had made." *Id.* at *4–5. The debtors did not respond to the trustee's notices, and did not object to the creditor's amended proof of claim until February 16, 2011 – three years after the creditor filed its amended proof of claim. *Id.* at *4.

The creditor opposed the debtors' objection to claim, prompting the *Menden* court to address the question of whether the debtors were "entitled to retrospective relief on their Objection filed three years after [the creditor] filed its amended proof of claim." *Id.* at *6. Citing *In re Euliano* out of the Bankruptcy Court in the District of Massachusetts, the *Menden* court established:

> In determining an appropriate limitation period in this case, the court considers the progression of a Chapter 13 case, the tension that exists between two processes during the case — the confirmation process and the claims allowance process . . . , and the necessity to resolve this tension in a timely

8

> manner for purposes of determining distribution under a Chapter 13 plan, which determination impacts all creditors entitled to payment. . . . To the extent that these processes conflict, it was incumbent upon Debtors under the circumstances of this case to resolve it.
>
> . . . .
>
> To that end, and because there is no specific time within which an amended claim must be filed, the procedure employed by the Chapter 13 Trustee in this court is to file a Notice of Claims Filed and Intent to Pay Claims before payments to creditors are made. This procedure comports with the fact that debtors generally have superior knowledge of facts relating to claims filed in their cases. It is the thus a debtor's burden to file an objection to an unsecured claim that is otherwise deemed allowed by the statute and that is, therefore, noticed to be paid in accordance with the Chapter 13 plan's treatment of unsecured debt where there is a basis for such an objection.

*Id.* at \*17–18 (citing *In re Euliano*, 442 B.R. 177, 180 n.5 (Bankr. D. Mass. 2010)) (citing cases noting that "variations on these themes are rampant . . . producing a mixed bag of jurisprudence on the *res judicata* effect of confirmed Chapter 13 plans, deemed allowance of proofs of claim, conflicts between plans and proofs of claim, and parties' failure to timely raise pertinent issues and protect their rights").

With the above principles in mind, the *Menden* court applied the doctrine of laches and determined that the "[d]ebtors' delay [was] presumptively unreasonable and prejudicial" because debtors and debtors' attorney were served with the trustee's notice, but "did not object to [the creditor's] proof of claim . . . until . . . nearly three years after being served with the [t]rustee's notice." *Id.* at \*19. Further, "[d]ebtors produced no evidence to rebut the presumption of prejudice." *Id.* The court overruled the debtors' objection to claim, "to the extent [d]ebtors [sought] retrospective relief and demand[ed] that funds paid to [the creditor] through the Chapter 13 plan be disgorged and repaid to the [trustee]." *Id.* at \*21–22. Other courts have held similarly.

9

In *Shook v. CBIC (In re Shook)*, the Ninth Circuit BAP reviewed this same issue. 278

B.R. 815 (9th Cir. BAP 2002). There, a creditor timely filed a proof of secured claim after the

debtors filed for relief under Chapter 13. *Id.* at 818. No objection to claim was filed pre-

confirmation, and the debtors' five-year plan was confirmed. *Id.* at 819. Thereafter, the trustee

filed and served a Notice of Trustee's Intent to Pay Claims, which "advised that the claim would

be deemed allowed . . . and approved by [d]ebtors for distribution . . . , unless [d]ebtors filed a

written objection to the claim within 30 days of the notice date." *Id.* No objection was filed in

response to the notice until "[a]pproximatley four and one-half years later" when "[d]ebtors filed

an objection to the [creditor's] proof of claim." *Id.* The creditor opposed, arguing the debtors'

objection was untimely. The debtors contended that neither the Bankruptcy Code nor

Bankruptcy Rules specify a limitations period for objecting to the allowance of proofs of claim,

and that laches did not apply. *Id.* at 827. At a hearing on the matter, the court asked "why

[d]ebtors had not objected to [the creditor's] claim for years before[?] [T]heir attorney stated

that he had 'overlooked it.'" *Id.* (quoting the hearing transcript). The bankruptcy court

overruled the debtors' objection to claim, holding that laches barred the objection.

On appeal, the Ninth Circuit BAP acknowledged the Bankruptcy Rules do not provide a

time limit for objections to proofs of claims, and such objections "may be filed at any time." *Id.*

at 828. Whether those objections should be sustained, however, requires additional analysis.

The Ninth Circuit BAP affirmed that "when an action is not subject to a statute of limitations, the

equitable doctrine of laches may alternatively limit the time within which the action must be

brought." *Id.* at 829 (citations omitted). Further, "[t]o succeed on its affirmative defense of

laches," a party asserting laches is "required to present evidence of an inexcusable delay in the

10

exercise of a known right, and that it was thereby prejudiced." *Id.* Importantly, said the Ninth

Circuit BAP, "the bare fact of delay creates a rebuttable presumption of prejudice." *Id.* (quoting

*Int'l Tel.*, 518 F.2d at 926).

Applying this standard, the Ninth Circuit BAP summarized that the debtors' "five-year

plan had been confirmed and nearly completed. . . . The trustee provided [d]ebtors with an

opportunity to file objections to those claims before payment. . . . Four and one-half-years later,

[the debtors] finally objected . . . with the weak explanation that counsel had 'overlooked' this

clearly important matter." *Id.* at 830 (quoting the hearing transcript). In affirming on the basis

of laches, the Ninth Circuit BAP concluded that debtors' argument was "insufficient . . . to rebut

the presumption of prejudicial delay. . . . Debtors simply waited too long to object. . . ." *Id.* at

831.

Other circuits have gone one step further, considering post-confirmation claim objections

as prohibited collateral attacks upon the final plan confirmation order. The Fifth Circuit in

*Simmons v. Savell (In re Simmons)* held that §§ 506(a) and 1325(a)(5) require that a proof of

secured claim must be acted upon before plan confirmation, and that an objection is thereafter

barred by § 1327(a). 765 F.2d 547, 553 (5th Cir. 1985). Similarly, the Seventh Circuit in *Adair*

*v. Sherman* held that "[w]hen a proof of claim is filed prior to confirmation, and the debtor does

not object prior to confirmation, the debtor may not file a post-confirmation collateral action that

calls into question the proof of the claim." 230 F.3d 890, 894–95 (7th Cir. 2000).

Compare the Fifth and Seventh Circuit holdings with that of the holding in *In re Barton*,

249 B.R. 561 (Bankr. E.D. Wash. 2000). There, the court sustained the debtor's objection to a

creditor's claim, even though the objection was filed five months after confirmation of debtor's

plan.  *Id.*  In opposition to the objection to claim, the creditor raised a laches defense, arguing

that its allowed secured claim had been determined by confirmation of the plan.  *Id.*  The court

disagreed, explaining that while "automobile lien creditors will in most cases be prejudiced when

many months pass between commencement of the Chapter 13 and the filing of an objection to

claim" it does not "automatically result in the doctrine of laches being applied."  *Id.* at 567.

"The delay in this case," the court explained "was caused in great part by the change of

counsel for the debtor.  Through no fault of the debtor or her counsel, the debtor was required

after plan confirmation to obtain new counsel. . . . Absent that circumstance . . . laches would

prevent the debtor now raising an objection to [the creditor's] claim."  *Id.*

None of the cases above are binding precedent on this court.  This Court finds the

reasoning of these cases persuasive such that an objection to claim should be filed promptly,

absent excusable circumstances.  Otherwise, the doctrine of laches may preclude the late relief

Debtor requested.  The Court finds that the facts of this case implicate the same equitable

principles as those discussed in *Menden* – a Northern District of Ohio case – and the question in

each case is nearly identical.

In the instant case, Americredit filed Claim Number 2 on January 18, 2022, and Debtor's

Plan was confirmed thereafter on May 10, 2022.  Debtor filed his Objection to Claim on October

29, 2024 – two years, nine months, and eleven days after Americredit filed Claim Number 2,

with only two payments remaining of the thirty six prescribed under the Plan.  In June 2022, the

Trustee filed her Notice, stating that "[u]nless a party in interest filed an objection to a claim . . .

within 30 days of the date of this notice is filed . . . , said claims will be paid according to the

terms of the plan."  ECF No. 26.  No objections were filed.  Additionally, the Trustee filed her

First and Second Reports in February 2023 and February 2024, respectively. Each showing that the Trustee paid Americredit on Claim Number 2 – no issues were raised, and no objections filed in response to either Report.

Applying laches to these facts, the first element – lack of diligence by the party against whom the defense is asserted – is met. Debtor's delay is presumptively unreasonable and prejudicial. Debtor produced no evidence to rebut the presumption at the Hearing, explaining only that he was "not sure how this slipped." Hearing Tr. at 2:07:04. Moreover, Debtor did not present any evidence to rebut the presumption in his Brief in Support. This is insufficient to rebut the presumption of prejudicial delay, which is the second element.

Although there are no statute or rule-imposed deadlines on filing objections to claim, the Trustee's Notice, as well as the Trustee's First and Second Reports did give Debtor an opportunity to respond or object. Debtor did not raise any objections to the Trustee's Notice, or to the Trustee's First and Second Reports. Laches applies and precludes the relief Debtor is requesting.

## CONCLUSION

For these reasons, Debtor's Objection to Claim Number 2 is overruled.

**IT IS SO ORDERED.**